We're honored to be the third case in the morning, call 210-1143 Nationwide Mutual Fire Insurance Company in the suburbia of Michael Margaret's v. T and N Master Builder and Renovators. On behalf of the Admiral, Mr. Stuart Brody. On behalf of the Admiral, Mr. James Carroll. Okay, both sides ready to proceed? Yes, sir. You may proceed when you're ready. Good morning, I'm the Appeals Court, Stuart Brody, seconded by Townsend Brody on behalf of the Admiral and Appointee. To get right to the heart of the matter, obviously the Court is very familiar with the case. And I think what's interesting about this case, and I know the courts and the appellate courts throughout Illinois have been looking at this, even as recently as June, we see this recent auto owners case from the 3rd District. And it's an interesting thing because in this case, we do have, I think, a lot of the facts that are admitted. We had a motion for judgment on the pleadings, which also gives us, I think, the approach and perspective that we are assuming these facts to be true, especially at this juncture in a de novo review as well. And we have a fairly simple lease to the extent that we see much more complicated 5-, 10-, 20-page commercial leases nowadays. But this is a fairly simple 3- to 4-page commercial lease. Counsel, can you ask a couple of preliminary special – answer a couple of preliminary special questions? Did the defendants maintain fire insurance on the premises during the term of the lease? We believe that they did have liability insurance. Fire insurance? Yes. Okay. For the fire damage. We believe that they do have that. Was that in the record? Could you call our attention to where that information appears in the record? Do you know? I don't believe it appears in the record because I don't think it was ever raised at the trial court level. I don't think it ever became part of any of the pleadings. And for the most part, because it's, you know, quote, unquote, inadmissible as evidence at the trial, it is not anything I pled or anything that I put into the record. You mentioned the lease. I simply know that obviously from handling the case. Okay. You mentioned the lease. Does it demoralize specific provisions, Section 4, which accepts fire damage control? And obviously that's one of the issues we get to because even if we look at some of the controlling cases like in Dixon and other cases, and we even seen some of the dissenting opinions recently, they're saying, let's look at the lease. Let's not just hold this as a bright-line test. And I think in this lease there would be three provisions that would come into consideration for this court, two of which I think would be in favor of the appellant. And as you mentioned, there's one that may look to the other side of the court. And what I mean is the holdover provision, which essentially tells us, and I don't think there's any dispute that at the time of this fire, the defendants and this tenant were a holdover. The lease had technically expired and they were a holdover. So the holdover provision legally, and as a technical matter, does apply in that holdover provision. It's clear that the parties did contemplate and allocate the risk of any damage in that holdover period would have to be borne by the tenant. So that's one I think that calls in favor of the intent of the parties being that they should be responsible for damages that they cause. The second thing is in that paragraph 4 of the repair provision, there are both sides of the coin. And I think that they're somewhat contradictory, because it is what it is. One part of that provision, obviously, is with some consideration of the landlord, of the lessor, making certain repairs and having some responsibilities, and at the same time, for the lessee agreeing to make any and all repairs to make sure that the premises are returned in the same condition. That second half of that that I think is in favor of the plaintiff here, and the defendant being culpable and liable for that, is consistent with the holdover provision. Can you address the defendant's argument that your holdover argument was forfeited? Well, I think the only thing that comes into play there, I think, is that in the de novo review, we have the leases part of the record. We've got the holdover provision, obviously, that's in there. I don't think there's anything waived at the trial court level to the extent that we're looking at a de novo review, and it is in and part of the record. If it was not in the record and it was trying to be supplemented without appeal, I would have to say that's true. It's not part of the record. I can't bring it in now. But the lease and all of its provisions were part of the record. I would agree that that one item did not come up at the oral argument in the trial court when we were there arguing the actual motion in Waukegan at that time. But I don't think it's waived to the extent that it's still part of the record, and this court clearly has the right to review the entire record for what's there. Counsel, there's basically two issues here to break it down with. First, as I understand it, you're basically taking the position that DICS should not apply, the holding in DICS should not apply here because this is a commercial lease, not a residential lease. As a bright-line test, correct. All right. And as we know, the reason being is that if under DICS, if the tenant, by payment of rent, becomes a co-insurer, you can't maintain a several-way action against them. So the issue is, does that rationale apply to commercial leases? If it does, then obviously you couldn't maintain it. Excuse me. This is a case of first impression in Illinois. Is there any case that squarely answers the question of whether or not the holding in DICS should apply to commercial leases? I don't think I've seen it. And that was the other point I was going to make that's very interesting. If you look at the M-National case, the Edgeworth case recently, I mean, these are second-district cases. Cincinnati, second-district case. The recent case of auto owners in third district, the DICS case. All of these cases, and, you know, this is a subrogation area which I pass in every day, and I have to say I'm on the other side of the coin, and very often I go to my same clients who have an insurance company and say, you know, this is a residential tenant. And I think for the most part, if you look at the myriad of cases throughout almost all the districts in Illinois cases, they essentially, all the courts are telling us there is pretty much a bright-line test when it comes to a residential tenant. There was, I think, a policy provision behind it. I think there was a perspective behind it to protect a lot of these residential tenants. There's probably some uninsured perspective. All of this plays into the fact that all of these cases that even the defendant relies on here as the appellee and all of the other cases cited are all residential leases. So I understand that. In DICS, didn't the Illinois Supreme Court rely on cases that dealt with commercial leases? They did rely on one, and I think that is why even when we see with Justice Holdred here looking at the dissent from the recent auto owners case from the third district, he says, listen, that's true. There was a reference to that in order to establish that principle. But it was clear that the Illinois Supreme Court in DICS said, look to the intent of the parties on the leases. That, to me, could not be more important than in a commercial setting. Because of all the other analysis I think I gave you in the brief, albeit they are not Illinois cases, but they provided some perspective about why in commercial leases we should be following exactly that language from DICS. Look at the language and intent of the parties more so in a commercial setting because that's really where we have the sophistication of parties. We've got to look to the intent of the parties. And yet the Supreme Court didn't draw that distinction. It didn't. I would agree. Now, is the Supreme Court's rule in DICS, isn't that what the majority of jurisdictions hold in commercial leases? Isn't that still a majority rule? Well, I have to say, I mean, I only cover four or five states in the Midwest, and I would say it's about 50-50 of the places that I'm in in terms of like Missouri, Michigan, Wisconsin, Indiana. You've got some, there are some decisions in these cases in the Midwest where we have seen it applied across the board on the residential side. But I have not seen that on the commercial side. As a matter of fact, there are some cases in Missouri recently that we've seen where on the commercial setting they have not uphold the code of insurance status because they looked at the lease and said there's no waiver of subrogation. They have looked exactly what I'm saying in this case where they've looked at it and said, you know, the intent of the parties were this commercial tenant should carry their own insurance and they should have to be culpable if they are proven to have caused the damage. And they've said that that is the way it should be in a commercial setting. And then they went ahead and said in a residential setting it's a different perspective. The only thing I think I noticed that would be important, obviously, that we were trying to say in the reply brief was simply that even under the Dix and these decisions, we'd like this court to actually look at the language of this lease to make a decision as well. You know, it's not just the distinction between the residential and commercial, which I think is a very important question. And as Justice Hudson just pointed out, I think it may be first impression if there was going to be a decision as a bright line test that Dix applied to commercial, period. But also, I think we need to get over that hurdle to say, listen, in this case, as they have directed us in Dix, we will look at the lease and here's what the best that we can see. This is what the lease says and this is what the intent of the parties appear to be. Thank you. Do you wish to respond? Yes. Good morning, Your Honors. James Burr for the Appellee. Your Honor, first of all, I think plaintiff's arguments fall flat for several reasons. First, in this particular case, we have a yield back provision that says that we are not responsible for fire loss. It's very clear. There's also a provision in there that discusses insurance and that the landlord, the lessor, will, we can infer from that, that the landlord would procure fire insurance. The specific provision- Why is that a topic? Do tenants have fire insurance? That I do not know, Judge. Your Honor, he does have liability insurance. As far as calculating fire insurance, I can't say one way or the other. I know that if we look at the lease, there is a provision that the tenant is not to make any, if we look at paragraph 12, the tenant is not to do anything to increase the rates of insurance for the building. And, in fact, they mention fire insurance and that he also has to comply with the fire department. And that's paragraph 12, compliance. It states, so as not to increase the rates of insurance upon the building and contents thereof and with the rules of the orders of the fire department in respect to any matters within their jurisdiction. So I think if we look at this lease as a whole, it's clearly that the parties anticipated that the building's owner would procure fire insurance and that the tenant, the lessor, would not do anything to increase the rates of that insurance. And that's the same in Serenipicus, which Dick's relied upon. Not to mention, obviously, the fact that there's a yieldback provision that specifically states we are not responsible for loss by fire. And I think that's key, which I think we don't get to the distinction between commercial and residential because we have a specific contract here, at least, that states we're not responsible for fire loss. So you're actually taking the contrary position. You're saying that whether or not we even get into the issue of whether Dick's applies to commercial, he says look to the lease. You're saying, okay, look to the lease. You still lose because of what the lease says. Absolutely. What succinctly rebutts his argument that the lease looks to the tenant for insurance? I'm sorry? What specific facts in the lease rebut his argument about the intent of the parties? Well, I think we have paragraph 4, the repair. We've got paragraph 12 where the parties specifically discuss fire insurance. There's no specific provision to say we're going to waive segregation and so forth. There's no specific provision that the tenant will be responsible, but we look at the lease as a whole. It's pretty clear that the parties intend that the landlord would, in fact, procure insurance. And I think if we even take the counsel, there's no Illinois case on point that makes any distinction. Counsel has spent a lot of time citing foreign jurisdictions. And one of the cases was the Seco, Missouri case where that particular jurisdiction made a distinction between commercial and residential. But in that case, there wasn't a yieldback provision. In that specific case, the Seco case, if you look at the court in Seco, mentions two other cases where they ruled upon where there were yieldback provisions. And one, solely, there was a yieldback provision stating we're not responsible for fire loss. Based on that yieldback provision alone, the same court, Missouri court, ruled that the tenant was not liable. So even if we accepted the plaintiff's cases from the foreign jurisdictions as the main case in Missouri, there would be a ruling in our favor. Let me see if I can break this down a little further. These parties, Section 8 does say, does indicate that the tenant would be responsible for damages. However, then Section 4 specifically accepts loss by fire. So there's an inconsistency, arguably, and generally the law is where there's an inconsistency in the provisions of the lease or contract, the more specific provision controls over the general one. And since you're saying that since the section specifically excludes loss by fire as being the tenant's responsibility, that should control over the more general language that the tenant's responsible for damages. Yes. In addition, I think we have to look at the, I don't think we can take this paragraph in isolation. If you look at the lease as a whole, this paragraph 8 is holdover and it's referring to rent. And that's what holdover provisions typically are in leases. The entire lease is about rent. In the last sentence, the lessee shall also pay the lesser. All damages sustained by lesser resulting from the retention of the possession of the lessee. And then the only reasonable interpretation would be increased rent. If the holdover tenant is holding over, the landowner wants to have somebody else move in at a higher rate, the tenant would be responsible for that additional rate. I mean, that's what a holdover provision is. If the two were in conflict, it would give the paragraph 4 would essentially remain meaningless. If there's any ambiguity, I think it goes against the drafter, which would be the lesser in this case. But I think if you look at this lease, it's pretty clear that the intent was we would not be responsible, the tenant would not be responsible for fire loss. I don't think you can have any other interpretation in paragraph 4. So I think that's pretty clear, and I think that's why it's distinguished from all of the cases that Plaintiff has cited, even these foreign jurisdictions. We have a specific yield back provision, and we have paragraph 12 that specifically addresses the party's intent with regards to fire loss. The landlord, the lesser, are procuring fire insurance. It's in there. We've got the fire department. We've got fire loss. We've got insurance. Underwriters, I mean, it specifically mentions underwriters in paragraph 12 with the requirements of any underwriters' intention so as not to increase the rates of insurance. I mean, I don't think you can get any more specific than that to show the intent of the parties, and I think that's what we can look at. If we were to apply DICS, and I think DICS does apply because I think the court, the second district in this court has ruled on both Cincinnati, which is depressed, and American National that, you know, you do achieve the status of a co-insured, and there isn't any distinction between a commercial and residential tenant. I don't think, I mean, Plaintiff doesn't cite any Illinois cases, and I don't think the only case that he cites that I can see in his briefs is the Missouri case, the SECO case, which is totally distinguishable because that particular case did not have a yield back provision. So I think there really isn't any issue here other than does DICS apply. I think that the second district has stated over and over again it does. The third district in the auto owner's recent case also found the same, citing the second district decisions, that you do achieve the status of a co-insured, and there's no distinction made between commercial and residential. And I think it is important that DICS relied heavily on Serenipicus, which we had a large industrial tenant with machinery and equipment. In this particular case, we have a lease tenant with three buddies who essentially work out of their garage. I know that's not part of the record, but we can look at this lease. It's a residence. It's a home. It's a dwelling. Yes, there were some admissions that this was a commercial lease, so it's a commercial lease. But I don't think you can jump to the jumps and make the inference that, you know, all commercial leases and all commercial tenants are more sophisticated than residential tenants. And no Illinois case court has stated such. Plaintiff does in a reply brief state one case that Illinois courts have made that distinction, the Genesco case. There's no citation to a specific page. The Genesco v. 33 North LaSalle claims states, quote, A commercial tenant is also in a better bargaining position during negotiations with the landlord and should be held to the agreed-upon terms of the lease. And then he cites Genesco. But I review the case. That's not what it states. There's no Illinois case. He's inciting any Illinois case that states that commercial tenants are more sophisticated than residential. I don't think we can make that inference. Thank you very much. Thank you. Did you wish to reply? Just a little clarification. I think it's just something to ask. And if I misunderstood it, I apologize. I thought when you asked did they have fire insurance, I assumed that you had meant liability insurance for fire damage. And I think the answer was yes. I don't. If your question was do they have fire insurance for themselves as first party for whatever their property was destroyed in the premises, the answer would be I don't know. But I assumed your question was did they have liability insurance for fire damage. And I think that was the answer that you got, which was yes, it was. Thank you. Thank you very much.